**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:24-cv-03387-GPG-CYC (consolidated with No. 1:25-cv-00277)

SAMUEL GARSON, Individually and on Behalf of All Others Similarly Situated,

     Plaintiff,

  v.

DMC GLOBAL INC.,
MICHAEL KUTA, and
ERIC V. WALTER,

     Defendants.

---

**PLAINTIFF SAMUEL GARSON'S OPPOSITION TO
COMPETING LEAD PLAINTIFF MOTIONS**

---

Plaintiff Samuel Garson ("Garson") respectfully submits this opposition to the competing motions for appointment as lead plaintiff brought by John Mark Stauffer ("Stauffer") (ECF 28, dated Feb. 5, 2025), Alessandro Laurent ("Laurent") (ECF 19, dated Feb. 4, 2025)[1], and Maxym Usatov ("Usatov") (ECF 27, dated Feb. 5, 2025), and in further support of his own motion (ECF 25, dated Feb. 5, 2025).

## PRELIMINARY STATEMENT

Under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), where multiple class members have sought appointment as lead plaintiff, Congress has established a rebuttable presumption in favor of appointing the movant who demonstrates the "largest financial interest in the litigation" provided that the movant also makes a *prima facie* demonstration that the movant satisfies Rule 23's typicality and adequacy requirements for class representatives.  15 U.S.C. § 78u-4(a)(3)(B)(iii).

The two movants here who claim the largest financial interests, Stauffer ($36,000) and Laurent ($31,000), purchased *all* of their shares and suffered *all* of their claimed losses in connection with the arbitrary and implausible (if not frivolous) extended class period set forth in the eleventh-hour *Laurent* action.  While courts generally consider the longest alleged class period when assessing financial interest, they also recognize the risks of accepting an extended class period without scrutiny, as doing so could incentivize movants to manipulate the class period for their own advantage.  To prevent such strategic maneuvering, district courts have the discretion to reject longer class periods that are either implausible or plainly frivolous.  In this case, not only is Laurent's extended

---

[1] Earlier today, Laurent filed a notice of non-opposition to the competing motions.  ECF 32.  Laurent's withdrawal does not affect the Court's analysis of the appropriate class period for assessing financial interest or its assessment of typicality, as discussed below.

class period both implausible and frivolous, but the manner in which he extended the class period bears numerous hallmarks of improper gamesmanship.

On December 6, 2024, Garson initiated this action by filing a complaint based upon, *inter alia*, defendants' overstatement of DMC Global Inc.'s ("DMC Global" or the "Company") goodwill in Q1 and Q2 2024 and its inadequate internal systems and processes which could not ensure an appropriate valuation of goodwill or reasonably accurate Q2 2024 guidance. *See, e.g.,* ECF 1 (No. 1:24-cv-03387, "*Garson* Compl."), ¶¶25-37. Based upon a careful analysis of the Company's SEC filings, press releases, earnings call transcripts, and other public statements, Garson alleged a class period of May 3, 2024 through November 4, 2024, inclusive. *Id.* at ¶1. The May 3, 2024 class period start is sensibly tied to the Company's: (a) public announcement of Q1 2024 goodwill (as of March 31, 2024), which Garson alleges was overstated; (b) acknowledgment of significant Q1 2024 headwinds at its Arcadia Products division, which Garson alleges should have resulted in a Q1 2024 goodwill write-down; and (c) the misstatement of its financial statements as a result. *Id.* at ¶¶25-30.

The *Laurent* complaint and its extended class period, by contrast, exhibit clear signs of strategic manipulation. To begin, it was filed on January 27, 2025, just one week before the February 4, 2025 lead plaintiff deadline. *See* ECF 1 (No. 1:25-cv-00277, "*Laurent* Compl."). The complaint's mandatory PSLRA certification signed by Laurant, however, is dated *December 15, 2024*, shortly after the *Garson* complaint was filed. *See id.* at 29 of 30. In other words, Laurent and his counsel waited *more than six weeks* to file their complaint. And although Laurent's counsel initially announced the new complaint's expanded class period, on January 29 and February 3, 2025 they reversed

2

course and issued press releases announcing that the class period was actually limited to the original May 3, 2024 through November 4, 2024 time period.

Laurent's dubious approach to extending the class period back to January 29, 2024, further supports the application of Garson's original class period. The *Laurent* complaint is virtually identical to the *Garson* complaint, with the *Laurent* complaint copying all of Garson's substantive allegations, mostly word-for-word. *See* section I(A), below. Instead of developing and articulating a plausible theory supporting misstatements predating defendants' Q1 and Q2 2024-related disclosures, Laurent arbitrarily cut-and-paste a paragraph from the *Garson* complaint's background section into the false statement section of his complaint. *Compare Garson* Compl., ¶23 *to Laurent* Compl., ¶23. The background paragraph concerned a January 29, 2024 press release announcing DMC Global's decision to undertake a strategic review of its business units, and did not speak to the issues Garson alleged were misstated. In fact, on January 29, 2024, the Company had yet to announce the amount of its Q1 2024 goodwill, disclose the Q1 headwinds it faced, or release its quarterly financial results. Because Laurent does not even attempt to provide any factual allegations or other support that defendants' January 29, 2024 statements were false or misleading when made, the Court should reject Laurent's extended class period for the purpose of assessing financial interest. Applying Garson's original class period, Laurent's and Stauffer's financial interests are exactly the same: zero.

In the alternative, the Court may forego the analysis of the appropriate class period and disqualify Stauffer and Laurent on typicality grounds. Because both movants purchased all of their shares and suffered all of their losses with respect to the extended

portion of the class period, there is a significant likelihood—based upon the pleadings currently before the Court—that the January 29, 2024 "misstatement" will be found inactionable and, as a result, Stauffer and Laurent will be outside the class period and will not have standing to maintain any of the remaining claims. Under these circumstances, they are atypical of the class of investors that suffered losses due to the Company's misrepresentations of its goodwill, systems and processes, and financial guidance, as alleged in the *Garson* complaint and the remainder of the *Laurent* complaint.

This leaves two remaining movants, Usatov ($10,800 financial interest) and Garson ($2,700 financial interest). Because Usatov has the largest remaining financial interest, the Court must turn to assessing his *prima facie* showing of typicality and adequacy. But Usatov has not provided a sworn declaration regarding his understanding of and willingness to undertake the duties of a lead plaintiff, making it difficult for the Court to undertake a preliminary assessment of his adequacy. His lead plaintiff motion also seems to accept the extended *Laurent* class period despite the obvious gamesmanship, further calling into question his adequacy. Because Usatov has failed to make a sufficient *prima facie* showing of adequacy, his motion should be denied.

In contrast, Garson previously made the required showing by approving and filing the initial complaint, executing a PSLRA certification listing his trades and affirming his willingness to serve as a lead plaintiff, submitting a declaration regarding his educational background, investing experience, and understanding of and willingness to undertake the duties of a lead plaintiff, and retaining experienced counsel with an office in this district. Garson has therefore made a *prima facie* showing of typicality and adequacy.

4

Because no movant can rebut Garson's initial showing, his motion for appointment as lead plaintiff should be granted, and the motions of Stauffer, Laurent, and Usatov should be denied. Garson further requests that the Court approve his selection of Johnson Fistel, LLP and its Denver lawyers as lead counsel for the putative class.

## ARGUMENT

### I. GARSON'S ORIGINAL CLASS PERIOD SHOULD GOVERN THE COURT'S ASSESSMENT OF WHICH MOVANT POSSESSES THE "LARGEST FINANCIAL INTEREST"

#### A. Comparison of the *Garson* and *Laurent* Complaints

Garson filed his complaint on December 6, 2024, and asserted claims under the Securities Exchange Act of 1934 against defendants, on behalf of a putative class of investors who purchased DMC Global securities between May 3, 2024 and November 4, 2024, inclusive. *See Garson* Compl., ¶1. Garson alleges, among other things, that defendants overstated DMC Global's goodwill for its Arcadia Products segment beginning in Q1 2024 by failing to account for "adverse events and circumstances affecting that reporting segment," including a "slowdown in short-cycle commercial activity, lower sales at its high-end residential division, and an approximately 10% decline in aluminum pricing versus last year's first quarter." *Id.*, ¶¶26-27, 30. Further, as a result of the overstated goodwill and its inadequate systems and processes, it misrepresented its financial results and was unable to ensure timely, accurate, and complete public disclosures. *Id.*, ¶30.

Given these allegations, Garson's class period begins on May 3, 2024, when the market opened after defendants first reported the Company's "goodwill of $141,725,000 as of March 31, 2024." *Id.*, ¶27. Defendants repeated their false and misleading statements about the Company's goodwill on August 1, 2024, along with providing unreasonable Q3 2024 guidance. *Id.*, ¶¶31-32. On October 21, 2024 and November 4,

2024, DMC Global revealed that it could not meet its previously announced Q3 2024 guidance, that it would take a $142 million impairment charge on its goodwill in Q3 2024, and that the internal systems at Arcadia were flawed. *Id.*, ¶¶38, 40-42. On this news, DMC Global's stock price plummeted. *Id.*, ¶¶39, 43.

The *Laurent* complaint was filed on January 27, 2025, just one week before the February 4, 2025 lead plaintiff deadline. *See Laurent* Compl. Notably, Laurent signed his sworn PSLRA certification attached to the complaint—which says he reviewed the complaint (actually, more vaguely "a" complaint)—on December 15, 2024. *See id.* (ECF 1) at 28 of 30, ¶2. Thus, Laurent and his counsel waited more than *six weeks* before filing his complaint and expanding the class period.

The *Laurent* complaint is essentially identical to the *Garson* complaint, with the *Laurent* complaint copying all of Garson's substantive allegations, mostly verbatim. *Compare Laurent* Compl., ¶¶13-21 to *Garson* Compl., ¶¶14-22 (substantive allegations); *Laurent* Compl., ¶¶24-36 to *Garson* Compl., ¶¶25-37 (materially false and misleading statements issued during the class period); *Laurent* Compl., ¶¶37-43 to *Garson* Compl., ¶¶38-44 (the truth emerges). Laurent makes two notable changes, however. First, the *Laurent* Complaint pleads the longer January 29, 2024 to November 4, 2024 class period. *Id.*, ¶1. Second, in order to do so, the *Laurent* Complaint takes Garson's "background" allegation regarding the Company's January 29, 2024 announcement of its strategic review process (*Garson* Compl., ¶23), and moves it word-for-word into his false statement section. *Laurent* Compl., ¶23. Laurent does this despite the fact that the January 29, 2024 statement says nothing about the Company's goodwill, financial results, guidance, or systems. *Id.* As to the purported reasons for falsity, Laurent groups the January 29,

2024 statement with the statements from May 2, 2024, which allegedly are false or misleading due to: (i) overstated goodwill; (ii) inadequate systems affecting operations; (iii) inadequate systems affecting the reasonableness of financial guidance; (iv) resulting misrepresentations of the Company's operations and financial results; and (v) resulting misleading public statements. *Laurent* Compl., ¶29.

**B.    The Court Should Utilize the *Garson* Complaint's Class Period**

The Court should use Garson's class period when determining each movant's financial interest because—as currently pled—Laurent's class period is arbitrary, implausible (if not frivolous), and the obvious product of gamesmanship.  While courts generally use the longest class period alleged, "there is a risk . . . to blindly accepting the longest class period without further inquiry, as potential lead plaintiffs would be encouraged to manipulate the class period so they ha[ve] the largest financial interest." *In re BP, PLC Sec. Litig.*, 758 F. Supp. 2d 428, 434 (S.D. Tex. 2010).  To guard against gamesmanship, district courts have the discretion to reject longer class periods where they are either implausible, *see In re Centerline Holding Co. Sec. Litig.*, No. 08 Civ. 1026(SAS), 2008 WL 1959799, at *3-*4 (S.D.N.Y. May 5, 2008), or obviously frivolous. *See Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620, 625 (E.D. Wis. 2009) (adopting obviously frivolous test at lead plaintiff stage).

For example, in *Centerline*, the court applied the plausibility standard used for motions to dismiss, where the court "accept[s] the allegations in the Complaint as true as long as the allegations are plausible in light of competing inferences that may be drawn from those same allegations," in assessing a longer class period.  2008 WL 1959799, at *3.  The court focused exclusively on the allegations in the complaint, finding that while "Centerline could have formulated its restructuring plan as early as December 5, 2006[,]

based on the factual allegations as pled, this [was] not *plausible*." *Id.* (original emphasis).

As a result, the court rejected using the longer class period to determine which movant

possessed the largest financial interest. *Id.*; *see also id.* at \*4 ("the appropriate standard

here is plausibility, not possibility").

Similarly, in ABIOMED, the court refused to blindly accept the longer of two class

periods. *Villare v. ABIOMED, Inc.*, Nos. 19 Civ. 7319 (ER), 19 Civ. 9258 (ER), 2020 WL

3497285, at \*4 (S.D.N.Y. June 29, 2020). Instead, without making a binding decision on

the proper class period, it carefully assessed the proffered factual allegations in deciding

whether the extended class period, as currently pled, was implausible or frivolous. *Id.* at

\*4-\*5. It ultimately rejected the longer class period finding, "[c]ontrary to [movant]'s

assertion, however, there are simply no allegations that defendants knew that

ABIOMED's rate of revenue growth was already in decline in early November 2018, one

month into the third quarter of 2019." *Id.* at \*5. In rejecting the longer class period, the

court recognized several hallmarks of gamesmanship, including that the complaint was

filed right before the lead plaintiff deadline and without the extended class period the

movant's financial interest would be 83% less. *Id.*

Here, Laurent's extended class period makes no sense in the context of his other

allegations and is entirely arbitrary. For example, if Laurent is alleging Arcadia Product's

goodwill was overstated prior to Q1 2024, then there would have been a false or

misleading statement when DMC Global announced its earlier quarterly or fiscal year end

financial results. For those earlier time periods, Laurent makes no effort to allege any

factual allegations supporting any "adverse events and circumstances affecting that

reporting segment." *Laurent* Compl., ¶29. Nor does the January 29, 2024 statement

8

have any connection to the Company's internal systems or guidance. The January 29, 2024 statement simply tells investors that DMC Global was considering strategic alternatives for its DynaEnergetics and NobelClad businesses.[2]  *Id., ¶*23.  As in ABIOMED, Laurent "proffers no factual allegations that defendants' statements made [on January 29, 2024] were false or misleading with respect to" overstated goodwill or inadequate systems affecting operations or financial guidance.  *ABIOMED*, 2020 WL 3497285, at *5; *Laurent* Compl., ¶¶25, 30.  The only apparent reason for the arbitrary January 29, 2024 start is that it was an easy way to bring Laurent into the "class period" with almost no effort.  All it took was to reorder the *Garson* complaint's substantive paragraphs.

There are also numerous hallmarks of gamesmanship.  Laurent filed his action on January 27, 2025, that is, 52 days into the PSLRA's 60-day deadline.  *See Laurent* Compl. Laurent's attached PSLRA certification, however, is dated December 15, 2024, shortly after the *Garson* complaint was filed.[3]  *See id.* at 29 of 30.  Thus, Laurent and his counsel

---

[2] Unlike the other false and misleading statements, Laurent fails to italicize relevant portions of the January 29, 2024 quoted language, leaving the Court to guess what part is alleged to be false or misleading.  *Laurent* Compl, ¶23.  This is not surprising since the paragraph was lifted directly from the *Garson* complaint, where the language was not alleged to be misleading and therefore was not italicized.

[3] Laurent's certification accompanying his complaint failed to follow the PSLRA which says that a plaintiff "shall" provide a sworn certification that "states that the plaintiff has reviewed the complaint and authorized its filing."  15 U.S.C. §78u-4(a)(2)(A)(i).  Laurent's certification accompanying his complaint instead says, "I have reviewed a Complaint against DMC Global Inc. ('DMC Global') and authorize the filing of a motion on my behalf for appointment as lead plaintiff."  *Laurent* Compl. at 28 of 30.  This initial certification, which failed to authorize the filing of the complaint, is further reason not to consider the class period in the *Laurent* complaint and it raises questions of whether Laurent had instead reviewed the *Garson* complaint for his December 15, 2024 certification.  Notably, when Laurent belatedly revised his certification on February 4, 2025, the new certification stated, "I have reviewed a Complaint against DMC Global Inc. ('DMC') and authorize the

waited more than six weeks to file their complaint. Although Laurent's counsel initially announced the complaint's expanded class period (January 29, 2024 to November 4, 2024), they thereafter repeatedly issued press releases announcing that the class period was limited to Garson's shorter May 3, 2024 through November 4, 2024 time period.[4] *See* ECF 19 (Laurent lead plaintiff motion) at 13 ("In addition to Pomerantz, Laurent is represented by the Portnoy Law Firm in this Action."); ECF 20-4 (Laurent Decl.) ("In addition to Pomerantz, I am also represented by the Portnoy Law Firm in this litigation."); https://www.globenewswire.com/news-release/2025/01/29/3017629/0/en/DMC-Global-Inc-Investors-Please-contact-the-Portnoy-Law-Firm-to-recover-your-losses-February-4-2025-Deadline-to-file-Lead-Plaintiff-Motion.html) (Jan. 29, 2025 press release) https://www.globenewswire.com/news-release/2025/02/03/3019931/0/en/DMC-Global-Inc-Investors-Please-contact-the-Portnoy-Law-Firm-to-recover-your-losses-February-4-2025-Deadline-to-file-Lead-Plaintiff-Motion.html (Feb. 3, 2025 press release). Moreover, similar to ABIOMED where the shortened class period significantly lowered the plaintiff's financial interest, the shorter *Garson* class period here eliminates Laurent's financial interest altogether.

Taken together, the foregoing highlights the questionable motives and obvious gamesmanship surrounding the filing of the *Laurent* complaint. For all of these reasons,

---

filing of a comparable complaint on my behalf." *Laurent* action, ECF 6-1. This revised (but still defective) certification seems to support that Laurent never approved the complaint with his name on it and which included the expanded class period.

[4] Stauffer's counsel, which also relies on the longer class period, did the same. *See* https://www.globenewswire.com/news-release/2025/01/29/3017435/34548/en/Deadline-Alert-DMC-Global-Inc-BOOM-Investors-Who-Lost-Money-Urged-To-Contact-Glancy-Prongay-Murray-LLP-About-Securities-Fraud-Lawsuit.html (Jan. 29, 2025 press release).

the Court should utilize Garson's May 3, 2024 and November 4, 2024 class period for the purposes of its lead plaintiff analysis. *See ABIOMED*, 2020 WL 3497285, at *4 (class period determination is for the purpose of assessing financial interest only and is not binding on the parties later in the litigation).

## II. GARSON SHOULD BE APPOINTED LEAD PLAINTIFF

### A. Neither Stauffer Nor Laurent Have Any Financial Interest in the Litigation; Both Are Also Atypical

While Stauffer and Laurent claim to possess the two largest financial interests ($36,000 and $31,000, respectively), neither movant purchased any shares during the *Garson* class period such that neither has any financial interest in the litigation.

Were the Court to forego making a decision on the appropriate class period, both Stauffer and Laurent would still be disqualified for failure to satisfy the second part of the Court's analysis, *i.e.*, typicality and adequacy. The "typicality requirement" is satisfied when "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "By definition, class representatives who do not have Article III standing to pursue the class claims fail to meet the typicality requirements of Rule 23." *Rector v. City & Cnty. of Denver*, 348 F.3d 935, 950 (10th Cir. 2003); *see also Prado-Steiman v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000) ("It should be obvious that there cannot be adequate typicality between a class and a named representative unless the named representative has individual standing to raise the legal claims of the class.").

Here, Stauffer and Laurent are not typical of the class, whose claims primarily concern defendants' overstatement of DMC Global's goodwill in Q1 and Q2 2024 and its inadequate internal systems and processes which could not ensure an appropriate

11

valuation of goodwill or reasonably accurate Q2 2024 guidance. Stauffer and Laurent purchased all their shares prior to these statements which began on May 2, 2024. Accordingly, if the single January 29, 2024 "false" statement included in the *Laurent* complaint were dismissed on a motion dismiss, the case would revert to the shorter class period, and Stauffer and Laurent would lack both standing and membership in the class. This scenario is more than mere speculation. *See Schaffer v. Horizon Pharma Plc*, No. 16-CV-1763 (JMF), 2016 WL 3566238, at *2-3 (S.D.N.Y. June 27, 2016) (determining whether the most adequate plaintiff presumption has been rebutted is a "predictive and probabilistic" process that requires the court to "assess risk" "based on the evidence available"). Laurent's complaint, which fails to allege *any facts* supporting the January 29, 2024 misstatement and the extended class period (or even any facts in addition to those in the *Garson* complaint), constitutes evidence of the very real risk of this occurring. *See Ewing v. Veru Inc.*, No. 22-23960-CIV, 2023 WL 11898765 (S.D. Fla. July 27, 2023) (quoting *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 n.14 (11th Cir. 2000)) ("A lead plaintiff movant meets the typicality requirement where *their allegations* share the 'same essential characteristics as the claims of the class at large.'") (emphasis supplied).[5]

Because Stauffer and Laurent are atypical, they are disqualified and the Court must evaluate the two remaining movants, Usatov and Garson.[6]

---

[5] While a lead plaintiff may later seek to extend the class period based upon additional factual allegations, for the purposes of the lead plaintiff analysis the Court should look to the allegations as currently pled. *See ABIOMED*, 2020 WL 3497285, at *5.

[6] Laurent is also inadequate as shown by his self-serving gamesmanship and defective PSLRA certifications, as described above.

### B.    Usatov Failed to Make a *Prima Facie* Showing of Adequacy

Although Usatov claims a larger financial interest than Garson, Usatov failed to make the requisite threshold showing of adequacy.  Specifically, unlike Garson (and Laurent), who along with their lead plaintiff motion provided sworn declarations regarding their background and understanding of and willingness to undertake the duties of a lead plaintiff (*see* ECF 17-3), Usatov has failed to make such a showing.[7]  *See In re the Boeing Co. Aircraft Sec. Litig.*, No. 19 CV 2394, 2019 WL 6052399, at *5 (N.D. Ill. Nov. 15, 2019) ("The "complete dearth of information . . . leaves the Court with virtually no basis to assess [his] adequacy to lead and direct litigation potentially involving thousands of claims for tens . . . of millions of dollars.").  Without such information, the Court may not adequately gauge his ability to fulfill the key responsibilities of a lead plaintiff, even on a preliminary basis.[8]

Further, Usatov's acceptance of Laurent's implausible and frivolous extended class period in his initial motion also calls into question his adequacy.  *See* ECF 21 at 3 of 14; ECF 22-3.  This suggests that, at least initially, he made little effort to analyze or understand the appropriate class period given the facts alleged.

---

[7] Usatov's counsel did provide one sentence on his background.  *See* ECF 27 at 11.

[8] Garson acknowledges that Courts in this district have found the Rule 23 requirements met without requiring a movant declaration.  However, such declarations may be of critical importance.  For example, in *Clifton v. Willis*, a movant's inadequacy was apparently discovered only as a result of his short declaration, which seems to have allowed competing movants to discover disqualifying background information.  *See* No. 22-CV-03161-DDD-JPO, 2024 WL 1508832 (D. Colo. Mar. 5, 2024), *report and recommendation adopted*, No. 1:22-CV-03161-DDD-JPO, 2024 WL 1508831 (D. Colo. Mar. 26, 2024); *see also* No. 22-CV-03161-DDD-JPO, ECF 18-5 (movant declaration); ECF 33 at 3 (opposition brief).

13

Because Usatov failed to make a satisfactory initial Rule 23 showing, his motion should be denied.

### C.      Garson Meets Rule's 23's Adequacy and Typicality Requirements

Garson has amply demonstrated his adequacy by retaining experienced counsel, approving and filing the initial complaint in this action (ECF 1), executing a sworn PSLRA certification listing his trades and affirming his willingness to serve as a lead plaintiff (ECF 1 at 29-30 of 30), and submitting a declaration regarding his educational background (BS in mathematics), investing experience (thirteen years as a professional commodities trader), and understanding of and willingness to undertake the duties of a lead plaintiff. *See* ECF 17-3.  He has therefore made a *prima facie* showing of typicality and adequacy and should be appointed lead plaintiff.

### CONCLUSION

Because Garson meets all of the PSLRA's lead plaintiff requirements, the Court should appoint him lead plaintiff and approve his selection of Johnson Fistel, LLP as lead counsel.

14

DATED:  February 25, 2025          JOHNSON FISTEL, LLP


*s/ Jeffrey A. Berens*
Jeffrey A. Berens
Bryan I. Schild
2373 Central Park Boulevard, Suite 100
Denver, CO 80238-2300
Telephone: 303.861.1764
jeffb@johnsonfistel.com
bryans@johnsonfistel.com

Michael I. Fistel, Jr.
JOHNSON FISTEL, LLP
40 Powder Springs Street
Marietta, GA  30064
Telephone:  470.632.6000
michaelf@johnsonfistel.com

*Attorneys for Plaintiff and Movant Garson*

15

**CERTIFICATE OF SERVICE**

I, Jeffrey A. Berens, hereby certify that on February 25, 2025 a true and correct
copy of the foregoing was served in accordance with the Federal Rules of Civil Procedure
with the Clerk of the Court using the CM/ECF system, which will send a notification of
such filing to all parties with an email address of record who have appeared and
consented to electronic service in this action.

/s/ Jeffrey A. Berens_____
Jeffrey A. Berens