IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Gordon P. Gallagher

Civil Action No. 24-cv-03387-GPG-CYC
      Member case: 25-cv-00277-GPG-CYC

SAMUEL GARSON, Individually and On Behalf of All Others Similarly Situated,

    Plaintiff,

v.

DMC GLOBAL INC.,
MICHAEL KUTA, and
ERIC V. WALTER,

    Defendants.

## CORRECTED ORDER

Before the Court are six motions representing four competing petitions for appointment as lead plaintiff, for approval of counsel, and for consolidation (the Lead Plaintiff Motions) (D. 18; D. 19; D. 21; D. 25; D. 27; D. 28) in this proposed class action. The Court has already granted consolidation with *Alessandro Laurent v. DMC Global Inc. et al.*, 25-cv-00277 (*Laurent* Case) (D. 26). The Court concludes that Movant John Mark Stauffer is most capable of adequately representing the interests of the class, and that his selection of counsel is appropriate. The Court therefore GRANTS his motion (D. 18). The other Lead Plaintiff Motions (D. 19; D. 21; D. 25; D. 27; D. 28) are DENIED.

### I. FACTS

The six pending Lead Plaintiff Motions relate to a proposed class action against Defendant DMC Global Inc. (DMC) and two of its executives (D. 1). The Class Action Complaint for

1

Violation of the Federal Securities Laws and Jury Demand is brought on behalf of a proposed class consisting of "all purchasers of [DMC securities] between May 3, 2024, and November 4, 2024, inclusive" (*id*. at 1). It alleges various misrepresentations beginning May 2, 2024, with corrective disclosures through November 4, 2024 (*id*. at 9–19).

Shortly before motions to serve as lead plaintiff became due here, Movant Alessandro Laurent filed the *Laurent* Case based on a broadly identical complaint (*Laurent* Case, D. 1). It differed primarily in converting one of the statements alleged as background in the present case into an alleged misrepresentation and, on that basis, expanding the class to include purchasers as early as January 29, 2024 (*id*. at 1, 7–8).

## II.  LEGAL STANDARD

The Private Securities Litigation Reform Act (PSLRA) specifies the "procedure that governs the appointment of lead plaintiffs in 'each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure.'" *In re Ribozyme Pharm., Inc. Sec. Litig.*, 192 F.R.D. 656, 657 (D. Colo. 2000) (quoting 15 U.S.C. § 78u-4(a)(1)). The PSLRA requires that "[n]ot later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice" advising members of the purported class of "the pendency of the action, the claims asserted therein, and the purported class period," as well as the deadline for moving to serve as lead plaintiff (60 days from the notice's publication). 15 U.S.C. § 78u-4(a)(3)(A)(i). And within 90 days of the notice's publication, "the court shall consider any motion made by a purported class member in response to the notice . . . and shall appoint as lead plaintiff the member . . . the court determines to be the most capable of adequately

representing the interests of the class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). In the event of multiple actions "asserting substantially the same claim," the determination must instead be made "[a]s soon as practicable" after resolving motions for consolidation. 15 U.S.C. § 78u-4(a)(3)(B)(ii)

Under the PSLRA, the "person or group that (1) either filed the complaint or made a motion in response to a notice, (2) has the largest financial interest in the relief sought, and (3) otherwise satisfies the requirements of Fed. R. Civ. P. 23" is presumptively the "most adequate plaintiff." *Medina v. Clovis Oncology, Inc.*, No. 15-cv-02546-RM-MEH, 2016 WL 660133, at *3 (D. Colo. Feb. 18, 2016) (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)). Though the PSLRA nominally requires courts to consider whether Federal Rule of Civil Procedural 23's requirements have been satisfied, only two of Rule 23's four requirements—typicality and adequacy—are relevant in the context of lead plaintiff appointments. *Wolfe v. AspenBio Pharma, Inc.*, 275 F.R.D. 625, 627–28 (D. Colo. 2011). The "most adequate plaintiff" presumption may be rebutted if a member of the purported class proves that the presumptively most adequate plaintiff will not fairly and adequately protect the class's interests or is "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *In re Ribozyme Pharm., Inc. Sec. Litig.*, 192 F.R.D. at 658 (quoting 15 U.S.C. § 78u–4(a)(3)(B)(iii)).

Once selected, "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). "As such, approval of lead counsel is a matter within the discretion of the Court." *Medina*, 2016 WL 660133, at *4 (citing *In re Nice Sys. Sec. Litig.*, 188 F.R.D. 206, 221 (D.N.J. 1999)). In exercising this discretion, the Court must determine whether the proposed lead counsel are "qualified, experienced[,] and able to vigorously conduct the proposed litigation." *Armbruster v. Gaia, Inc.*,

No. 22-CV-03267-NYW-STV, 2023 WL 2613817, at *4 (D. Colo. Mar. 23, 2023) (quoting *Darwin v. Taylor*, No. 12-cv-01038-CMA-CBS, 2012 WL 5250400, at *8 (D. Colo. Oct. 23, 2012)). The Court will "only disturb the lead plaintiff's choice of counsel if necessary to 'fairly and adequately protect the interests of the class.'" *Id.* (quoting *In re Molson Coors Brewing Co. Sec. Litig.*, No. 19-cv-00455-DME-MEH, 2019 WL 10301639, at *3 (D. Colo. Oct. 3, 2019)).

### III. ANALYSIS

The four individuals seeking appointment as lead plaintiff in order of filing are John Mark Stauffer, who alleges a loss of $36,018.62 (D. 18 at 7); Allesandro Laurent, who alleges a loss of $31,634 (D. 19 at 15); Maxym Usatov, who alleges a loss of $10,878 (D. 21 at 7); and Plaintiff Samuel Garson, who alleges a loss of "more than $2,700" (D. 25 at 6). Laurent filed Notice acknowledging that he appeared not to have the largest financial interest and effectively withdrawing his candidacy for lead plaintiff (D. 32 at 2). Three remain.

**A. Appointment of Lead Plaintiff**

Each Movant contends that he has the largest financial interest in this action and that he has satisfied Federal Rule of Civil Procedure 23's requirements. All therefore lay claim to the most-adequate-plaintiff presumption.

Stauffer alleges the largest loss, but all of his alleged losses are based on stock purchases that occurred during the extended class period from the *Laurent* case (D. 18-4 at 2). Usatov challenges the extended class period and argues that, using the proper class period from the present action, he has the largest financial interest (D. 34 at 3–4). Usatov also argues that Stauffer is atypical because his purchases fall in the extended class period (*id.*). Garson echoes these arguments and further argues that Usatov "has not provided a sworn declaration regarding his

4

understanding of and willingness to undertake the duties of a lead plaintiff" and his background, "making it difficult for the Court to undertake a preliminary assessment of his adequacy" (D. 33 at 5).

Usatov and Garson each challenge the use of the extended class period and argue that, because Stauffer only made purchases during this period, his claims are atypical. Garson notes that "if the single January 29, 2024 'false' statement included in the *Laurent* complaint were dismissed on a motion dismiss, the case would revert to the shorter class period, and Stauffer . . . would lack both standing and membership in the class" (D. 33 at 13).

Stauffer notes that the cases have already been consolidated and that any gamesmanship in extending the class period is attributable to Laurent (D. 38 at 3). Stauffer argues that the extended class period is not frivolous and that courts overwhelmingly favor using the broadest class period found in consolidated cases (*id*. at 4–6).

Courts generally used the longest class period, but this approach is susceptible to gamesmanship. *Hardy v. MabVax Therapeutics Holdings*, No. 18-CV-01160-BAS-NLS, 2018 WL 4252345, at *4–*6 (S.D. Cal. Sept. 6, 2018) (collecting cases and discussing approaches). In order to prevent gamesmanship, some courts have adopted the approach of "using 'the longest noticed class period unless the factual allegations supporting that period are obviously frivolous.'" *Ventrillo v. Paycom Software, Inc.*, No. 5:23-CV-01019-F, 2024 WL 1750658, at *3 (W.D. Okla. Apr. 23, 2024) (quoting *In re BP, PLC Securities Litigation*, 758 F.Supp.2d 428, 434 (S.D. Tex. 2010)); *see also Plumbers & Pipefitters Loc. 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620, 625 (E.D. Wis. 2009) (considering whether "the allegations supporting the longer class period are not obviously frivolous"). The Court finds this authority persuasive.

The key allegation supporting the extended class period is the one modified in the *Laurent* Case suggesting that Defendants made a misstatement at the beginning of the extended class period. That allegation is:

> 23. The Class Period begins on January 29, 2024, when DMC Global issued a press release entitled, "DMC Global Announces Strategic Alternatives Process for DynaEnergetics and NobelClad Businesses." The press release described Arcadia Products as the Company's "core division," and it also stated in relevant part:
>
> [DMC] today announced its board of directors ("the Board") has initiated a review of strategic alternatives for its DynaEnergetics and NobelClad businesses.
>
> The strategic review process formalizes DMC's ongoing efforts over the past several months to consider opportunities for unlocking shareholder value. The Board has retained a financial advisor and may retain other advisors to assist the Board in evaluating DMC's current strategy, operations, and capital structure. The Board will consider various strategic, business, and financial alternatives for DMC's DynaEnergetics and NobelClad businesses. These could include, among other things, a sale, a merger or other business combination of a portion of DMC's business-unit assets, and/or a strategic investment.
>
> David Aldous, DMC's chairman, said, "One year ago, we began evaluating and developing new operating strategies for our business units. Since Michael Kuta's appointment as CEO less than six months ago, we have been executing those strategies, and now are focused on opportunities to maximize the value of our portfolio with the help of our financial advisor."
>
> Aldous continued, "Arcadia Products is a core division of DMC, and we are taking a very focused approach toward maximizing its differentiated business model and capitalizing on growth opportunities within its large addressable markets. Both DynaEnergetics and NobelClad are valuable, industry-leading businesses with strong margin profiles. However, the Board and management team are aligned with the view expressed by many DMC shareholders that the Company should seek to simplify its portfolio to drive improved shareholder value. During the review process, the Board and management team will continue to execute

> DMC's strategy and will remain very focused on running our businesses."

(*Laurent* Case, D. 1 at 7–8). Laurent alleges that this statement is false and misleading as follows:

> 29. Defendants' statements in ¶¶ 23–28 were materially false and misleading when made because they misrepresented and failed to disclose the following adverse facts about DMC Global's business, operations, and prospects which were known to Defendants or recklessly disregarded by them: (i) the goodwill associated with Acadia Products was overstated due to the adverse events and circumstances affecting that reporting segment; (ii) DMC Global's materially inadequate internal systems and processes were adversely affecting its operations; (iii) the Company's inadequate systems and processes prevented it from ensuring reasonably accurate guidance and that its public disclosures were timely, accurate, and complete; (iv) as a result, Defendants misrepresented DMC Global's operations and financial results; and/or (v) as a result, the Company's public statements were materially false, misleading, or lacked a reasonable basis when made.

(*id*. at 11).

The January 29, 2024 press release says nothing about Acadia Products' goodwill or its value; thus, any misstatement must be related to DMC's knowledge or recklessness about its "materially inadequate internal systems and processes." The press release refers repeatedly to DMC's strategic review initiatives, allegedly instituted in 2023, and expresses optimism about the potential results of that process. Ultimately, the alleged corrective disclosures also refer to DMC's "strategic review process" along with providing revised revenue guidance (*Laurent* Case, D. 1 at 14–15). Although these are far from smoking gun allegations, they are not obviously frivolous. Thus, the Court finds it appropriate to use the extended class period.

It is also noteworthy that Stauffer's purchases occurred less than a week outside of the shorter class period proposed in the instant case (D. 18 at 7; D. 18-4 at 2). Even if, ultimately, viable allegations and facts developed cannot support a class period reaching all the way to January

2025, it is possible that they will extend to a period shortly before the initially proposed period and, therefore, encompass Stauffer's claims. Regardless, as other courts have noted, the Court can revisit its decision and appoint a different lead plaintiff if appropriate. *Hardy*, 2018 WL 4252345, at *6 (citing *Z–Seven Fund, Inc. v. Motorcar Parts & Accessories*, 231 F.3d 1215, 1218 (9th Cir. 2000))

Applying the extended class period, the Court finds that Stauffer is the presumptively the most adequate plaintiff and that the presumption has not been rebutted. His claims are typical of those among class members, and he has not been shown to be not subject to any unique defenses. Based on the foregoing, Movant Stauffer's motion to serve as lead plaintiff is GRANTED.

### B. Appointment of Lead Counsel

Movant Stauffer has also requested that the Court approve his selection of Glancy Prongay & Murray LLP as Lead Counsel in this case (D. 18 at 9). The Court has reviewed the firm résumé filed with Movant Lingam's Lead Plaintiff Motion (D. 18-5) and concludes that the firm possesses extensive experience in class actions and securities litigation. As such, the Court finds that Glancy Prongay & Murray LLP is qualified, experienced, and capable of vigorously conducting the proposed litigation, and that Movant Lingam's choice of counsel need not be disturbed. The Court accordingly GRANTS Movant Stauffer's request to approve Glancy Prongay & Murray LLP as lead counsel.

### IV. CONCLUSION

Accordingly, it is ORDERED that the Motion of John Mark Stauffer for Consolidation of Related Actions, Appointment as Lead Plaintiff, and Approval of Lead Counsel (D. 18) is

GRANTED.  It is FURTHER ORDERED that the competing Lead Plaintiff Motions (D. 19; D. 21; D. 25; D. 27; D. 28) are DENIED.

DATED April 24, 2025.

BY THE COURT:

Gordon P. Gallagher
United States District Judge